COLONIE FIBRE CO., Inc., v. NATIONAL
LABOR RELATIONS BOARD.

No. 193, Docket 20341.

Circuit Court of Appeals, Second Circuit.

July 14, 1947.

CLARK, Circuit Judge, dissenting in part.

69

Nathan M. Medwin, of Albany, N. Y. (Henry Weiss, of Albany, N. Y., of counsel), for petitioner.

Gerhard P. Van Arkel, Morris P. Glushien, A. Norman Somers, Ida Klaus and Robert E. Mullin, all of Washington, D. C., for respondent.

Before CHASE, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ The legal effect of the fact that the discharges were perhaps made in part because of "dual unionship" we need not consider, since the Board did not rest its decision on that ground, but on the sole ground that the discharges were based on the maintenance-of-membership provision of the agreement of May 23, 1945. The Board concluded, and the evidence amply supports its conclusion, that no agreement existed between the A.F. of L. union and the company from March 14, 1945, to May 23, 1945. On that foundation, and in the light of the evidence of the conduct of the union and the company, the Board construed the maintenance-of-membership provision to mean this: As a condition of further employment, an employee who was a member of the union 15 days after August 28, 1944, must have maintained his membership in the union for a period starting eight and a half months before May 23, 1945.

■ It might be argued that the agreement could be interpreted thus: One who was a union member either fifteen days after August 28, 1944, or thereafter, and who later ceased to be, must become a union member shortly after the execution of the new agreement (i. e., May 23, 1945) and remain such for the life of that agreement. Such a provision would be less onerous than the conventional and valid closed-shop clause. But the company does not contend for such a construction. In its brief, it says that the agreement required "continued membership by those who once voluntarily joined." Moreover, we think that the conduct of the union and the company renders not unreasonable the Board's interpretation. We refer to these facts: (1) The union's demand for the discharges was first made on the very day the new agreement was executed. (2) Referred at that time to the company's lawyer, the union, about a week later, demanded the discharges pursuant to the maintenance-of-membership clause; the lawyer then informed the union that it would comply with that request if given evidence that these men were members of the union "prior to

**70**

the execution" of the new contract, and that the union, after a hearing, "voted that they were no longer members in good standing." (3) Subsequently, Blais was notified by the union that it would press for his discharge if, after a union hearing on June 10, 1945, the union found him guilty of the charge of "failure to maintain dues payments for an extended period of time." (4) On June 11, the union wrote the company that it had decided that Blais was no longer a member of the union in good standing "and should be removed from the employ" of the company "in accordance with the present union agreement and its provisions regarding these employees of the company who were members in good standing of the Union fifteen days after August 28, 1944." On June 18, the union wrote the company a substantially similar letter concerning Blair. (5) The company discharged Blais and Blair on June 12 and June 20, respectively.

■ We think the evidence sufficiently supports the conclusion that these discharges were knowingly made by the company on the basis of the retroactive feature of the maintenance-of-membership provision. We agree with the Board that such a provision is not within § 8(3) of the Act. Wallace Corp. v. N.L.R.B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216; N.L.R.B. v. American White Cross Laboratories, Inc., 2 Cir., 160 F.2d 75.[5]

■ Before the Board's examiner, Blais testified that he did not wish to be reinstated. Accordingly, there should be stricken from the order, and from the notice to be posted, the requirement that the company offer him reinstatement. The order and the notice, however, may state that this offer would have been required if he had not stated that he would not accept it. With these modifications, we shall grant enforcement of the order.

CLARK, Circuit Judge (dissenting in part).

I dissent from so much of the opinion and decision as denies enforcement to the portion of the Board's order requiring the company to offer Blais reinstatement and to post a notice to that effect. This perhaps is a small matter; but the smaller it is, the more I am troubled that my brethren can discover grounds, or feel impelled, to interfere with the remedial action found necessary by the Board. For the evidence as to Blais' lack of desire to resume work in the plant was before the Board, which limited its provision as to the payment of back wages to Blais accordingly. There seems nothing strange in a decision by the Board in the exercise of its discretion that the action of the employer, and particularly its notice to all the employees in the plant, must show a complete repudiation of the unfair labor practices found and a full remedy. Phelps Dodge Corp. v. N.L.R.B., 313 U.S. 177, 189-195, 61 S.Ct. 845, 85 L. Ed. 1271, 133 A.L.R. 1217; Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 704, 64 S.Ct. 817, 88 L.Ed. 1020. An order making the omission without any explanation may well be so ambiguous to the workers as to be harmful—as the opinion substantially concedes by allowing the further modification. It is the Board's duty to see that the statutory guaranty against discharge for union activity is carried out; its apparent failure to do so as to any individual will cause doubt and confusion unless it is clarified. But permission to include a detailed explanation as to Blais is at best doubtfully more effective than the Board's own simpler plan. Further, the Board should be entitled to appraise the worth and meaning of the employee's statement when drafting a quieting order for the plant. We should not, in the face of the Board's contrary decision, decree the forfeiture of an unfairly dismissed employee's right to reinstatement because of a hasty remark he made in the heat of trial. Such a scrutiny of the decision of an expert agency for small flyspecks seems to me the wrong type of judicial review, yielding constructive advantage to no one, but promoting confusion and doubt in the factory and as to the administration of the statute. Apparently we have enforced such orders in the past as a matter of course. Compare N.L.R.B. v. Volney Felt Mills, 2 Cir., 162 F.2d 204, as entered June 25, 1947.

[5] Our opinion in the White Cross Laboratories case serves to answer certain contentions of the company here.