**ELM CITY BROADCASTING CORPO-RATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 119, Docket 23583.**

United States Court of Appeals
Second Circuit.

Argued Oct. 13, 1955.

Decided Dec. 12, 1955.

John Q. Tilson, Jr., New Haven, Conn., Wiggin & Dana, New Haven, Conn., John D. Fassett, Alfred F. Celentano, New Haven, Conn., of counsel, for petitioner.

Theophil C. Kammholz, General Counsel., Chicago, Ill., David P. Findling, Associate General Counsel, Marcel Mallet-Provost, Asst. Gen. Counsel, and Fannie M. Boyle and John E. Jay, Attorneys, N. L. R. B., Washington, D. C., for respondent.

Before FRANK, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The Elm City Broadcasting Corporation has petitioned us pursuant to Section 10(f) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to review and set aside an order of the National Labor Relations Board reported at 111 N. L. R. B. 980. The Board has petitioned for enforcement of its order. We have jurisdiction under Section 10(e) and (f) of the Act, the alleged unfair labor practices having occurred in New Haven, Connecticut within this judicial circuit.

On December 7, 1953, the American Federation of Television and Radio Artists, A. F. L., the Union here involved, filed with the Board a petition for certification as the collective bargaining agent for certain employees of the Company. After a discussion among representatives of the Company, representatives of the Union, and a representative of the Board, the Company and the Union signed a consent election agreement making the determination by the Board's Regional Director of all questions arising out of the conduct of the election "final and binding" on the parties. Pursuant to this agreement, an election was held on January 15, 1954, in which the Union failed to receive a majority of the votes cast. The Union filed timely objections to the election, and the Regional Director, after investigation, issued a report finding merit to some of the objections and setting aside the election as void. Attempts by the Company to obtain Board review of the Regional Director's determination were denied by the Board.

The Regional Director then ordered another election which was held on June 4, 1954. The Union won this election and was certified. The Company thereafter refused to bargain with the Union, contending that the first election was valid and that the Regional Director was therefore precluded by Section 9(c) (3) of the Act from conducting a second election within twelve months from the date of the first election.

In support of its position that the Regional Director improperly set aside the first election, the Company, at a hearing on the refusal-to-bargain charge and on review before the Board, advanced two contentions which have now been abandoned: (1) that the Company had been misled by the Board representative into signing a consent election agreement making the Regional Director's determination on all issues arising out of the

election final and binding upon the parties; and (2) that the Board's Rules and Regulations providing for that type of consent election are in violation of the due process clause of the Fifth Amendment and the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. and the Taft-Hartley Act.

■■ Under the consent agreement entered into by the Company, the Regional Director's decision is final unless " 'arbitrary or capricious or not in conformity with the policies of the Board and the requirements of the Act.' " Buffalo Arms, Inc., v. N. L. R. B., 2 Cir., 1955, 224 F.2d 105, 109. The Company now alleges that the Regional Director's decision setting aside the first election was arbitrary and capricious. However, under Section 10(e) of the Act, unless this issue was raised before the Board, we cannot consider it on appeal unless extraordinary circumstances are shown to exist. See N. L. R. B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 350, 73 S.Ct. 287, 97 L.Ed. 377; N. L. R. B. v. Cheney California Lumber Co., 1946, 327 U.S. 385, 389, 66 S.Ct. 553, 90 L.Ed. 739; Marshall Field & Co. v. N. L. R. B., 1943, 318 U.S. 253, 256, 63 S.Ct. 585, 87 L.Ed. 744; N. L. R. B. v. Carlton Wood Products Co., 9 Cir., 1953, 201 F.2d 863, 866, 36 A.L.R.2d 1170. No such extraordinary circumstances are found here.

Therefore, the sole issue on this appeal is whether the Company alleged or sought to prove before the Trial Examiner or the Board that the Regional Director acted arbitrarily and capriciously in his determination upon the merits of the objections to the first election. The Company now contends that at the refusal-to-bargain hearing the Trial Examiner precluded the admission of evidence offered by the Company to prove the arbitrariness of the Regional Director's action in setting aside the first election. The Board argues that the Company alleged arbitrary and capricious conduct by an agent of the Board in connection with the procuring of the consent election agreement, an issue which was decided adversely to the Company on the basis of conflicting substantial evidence by the Trial Examiner and the Board.

A careful examination of the record has satisfied us that the Company neither alleged, nor sought to prove at the two-day hearing, that the Regional Director acted arbitrarily and capriciously in his determination upon the merits of the objections to the first election.

1. After the Company had called one Taddei, its first witness, counsel for the Company stated at considerable length what the contention of the Company was. He said, in substance: "We charge a direct misrepresentation by the attorney [for the Board], Sidney A. Coven, [in the procuring of the consent election agreement]." The reference in a statement of the Examiner to "arbitrary and capricious" action on the part of Mr. Coven was made in this context and clearly referred to the issue of the manner in which the consent election agreement was obtained.[1] From this point until well into the second day of the hearing the evidence was entirely concerned with the circumstances under which the Company signed the consent election agreement.

■ 2. The Company, on the second day, having completed its case on the question whether the Company had been misled into signing the wrong form, sought to interrogate Taddei concerning the Company program of wage increases and sick benefits. After the Trial Examiner had sustained an objection to this line of inquiry, counsel for the Company argued the point at length, stating that the answer, if allowed, would "bear on the merits of the Union objections to the first election." Company counsel then offered to prove that "the Regional Di-

---

1. References in briefs of company's counsel before the Trial Examiner and the Board to "arbitrary and capricious" conduct on the part of the Regional Director also clearly refer to the manner in which the consent election agreement was obtained. Counsel who appeared before us were not of counsel before the Examiner or the Board.

rector *was in error* in reversing" the first election. The Trial Examiner properly sustained the objection and denied this offer of proof. An offer of proof that the Regional Director's determination had been "erroneous" or "incorrect" would not demonstrate arbitrary action; and the exclusion of this evidence did not indicate that an offer of proof of evidence showing arbitrary action would be likewise excluded.

3. After Company counsel had again reiterated a claim of "error," the Trial Examiner said: "You have raised the major issue that there was capricious conduct on the part of the Regional Director and the Hearing Officer; and you claimed you didn't sign a consent agreement. * * *" The Company argues that this comment indicates that the Trial Examiner understood that the Company was attacking the Regional Director's action *in setting aside the first election* as arbitrary and capricious. The context shows that the Examiner thought the claim was limited to one of arbitrary action *in obtaining a consent agreement*, not *in setting aside the first election*.

■■ 4. Shortly thereafter Company counsel claimed that the Board rules providing for consent agreements under which a decision of the Regional Director was to be final as to the need for a hearing, were unconstitutional rules. This claim was stated "in addition to the claim * * * that the decision of the Regional Director and his subordinates * * * were arbitrary and capricious." An extended argument between counsel ensued which the Trial Examiner cut off by saying, quite properly, that he was "not going to take any evidence *on the merits* of the Regional Director's actions" and that the decision of the Regional Director "as to the merits of any dispute occurring following [a consent election] is not reviewable by the Trial Examiner and will not be reviewed by the Board." Counsel for the Company now had another opportunity to apprise the Examiner of his position. What he did was to again tender an offer of proof of "what we claim to be a *factual error*

relating to certain bonuses and sick benefits." This vague offer was properly denied, since it was confined to the merits of the Regional Director's determination and failed to allege arbitrary action. Being limited to proof of factual error its denial did not betoken exclusion of evidence offered to show arbitrary action. Perhaps if the offer had been stated in terms of specific testimony having some tendency to prove arbitrary action, the Company's position on appeal might be stronger. But the Examiner's refusal to receive evidence concerning the Company's program of wage increases and sick benefits cannot be said to have precluded the Company from opportunity to prove arbitrary action.

■ Since the Company did not allege or seek to prove before the Trial Examiner or the Board that the Regional Director's determination on the merits setting aside the first election constituted arbitrary action, its refusal to bargain violated Section 8(a) (5) of the Act.

The Company's petition to review and set aside the Board's order is denied, and the Board's petition to enforce the order of the Board is granted.