532 F.2d 1169
 92 L.R.R.M. (BNA) 2137, 37 A.L.R.Fed. 730,
78 Lab.Cas. P 11,373
 Aaron KESNER, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Truck Drivers, Oil Drivers, Filling Station and Platform
Workers Union LocalNo. 705, affiliated with International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, Intervenor.
TRUCK DRIVERS, OIL DRIVERS, FILLING STATION AND PLATFORM
WORKERS UNION LOCAL705, etc., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 75-1073, 75-1294.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 3, 1975.
Decided April 8, 1976.
Rehearing Denied in No. 75-1294 May 18, 1976.
 
 Sherman Carmell, Aaron Kesner, Chicago, Ill., for petitioners.
 Elliott Moore, Deputy Associate Gen. Counsel, Peter Carre, John Ferguson, N. L. R. B., Washington, D. C., for respondent.
 Before HASTINGS, Senior Circuit Judge, and PELL, and BAUER, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 These cases are before the court upon section 10(f) petitions for review of an order of the National Labor Relations Board. In Petition No. 75-1073, Aaron Kesner seeks to review and set aside that part of the NLRB order which refused to require an affirmative remedy against Truck Drivers, Oil Drivers, Filling Station and Platform Workers Union Local 705 (Local 705) for a breach of the duty of fair representation. Local 705 was granted leave to intervene in No. 75-1073 to the extent it seeks to have this court affirm the Board's finding and order in that case. In Petition No. 75-1294, Local 705 seeks to set aside that part of the same NLRB order which found that Local 705 had violated § 8(b) (1)(A), 29 U.S.C. § 158(b)(1)(A),[1] in the processing of Kesner's seniority grievance. The Board's decision and order appears at 209 NLRB No. 46 at 292 (1974). The Board has not cross-filed under section 10(e), 29 U.S.C. § 160(e), seeking enforcement of its order.
 
 Factual Background
 
 2
 The underlying factual situation precipitating these cases stems from Kesner being referred by Local 705 to the Foster and Kleiser Company (F & K) in February, 1970, for a job as a truckdriver. Kesner drove for F & K approximately two months before his employment was terminated. The controversy which was involved in Kesner's grievance was whether he acquired seniority rights or any sort of permanent employee status. The particular facts upon which Kesner based his claim as well as those relating to the processing of his grievance are set forth in detail in 209 NLRB at 294 et seq. The grievance procedures were ultimately resolved against Kesner, and the matter was brought into the NLRB sphere by a complaint based upon Local 705's handling of the Kesner grievance.
 
 
 3
 On the facts developed at the hearing, the Board, contrary to the Administrative Law Judge (ALJ), concluded that Local 705, through its Business Representative Donald Heim, had breached its duty of fair representation towards Kesner, thereby restraining his section 7 rights and violating section 8(b)(1)(A) of the Act. (29 U.S.C. §§ 157 and 158(b)(1)(A) respectively.) In the Board's view, once the union undertook to present Kesner's grievance to the arbitral committee, it was obliged to act as his advocate and present his grievance in the light most favorable to him. By stating that the grievance was without merit, Heim undermined Kesner's case before the committee, and by this conduct the union breached its duty of fair representation. The Board ordered the respondent union to cease and desist from such conduct. The Board, however, found no basis for reversing the ALJ's finding that Kesner's grievance was without merit, and it therefore determined that an affirmative remedy was not justified.
 
 Petition No. 75-1294
 A. Section 10(f) Scope of Review
 
 4
 Generally speaking, Local 705 challenges the Board's finding of an unfair labor practice on the part of the union in breaching its duty of fair representation, where the union's conduct was unrelated to the employee's union membership and activities or his utilization of the Board's processes. The union's position, again generally, is that the Board was relying upon the doctrine enunciated in Miranda Fuel Co., 140 NLRB 181 (1962), enforcement denied, 326 F.2d 172 (2d Cir.1963), and that this doctrine is no longer viable.
 
 
 5
 Before reaching this "merits" issue, we must consider the contention of the Board that the issue is not properly before this court since the contention that "Miranda Fuel is dead" was not presented to the Board and since there were no special circumstances excusing Local 705's failure to give the Board an opportunity to pass on this question, citing section 10(e) of the Act, 29 U.S.C. § 160(e), as precluding this court's consideration.[2] The present matter, of course, is before the court pursuant to section 10(f) rather than 10(e).[3] We are of the opinion that there is jurisdictional equivalence between the two sections in view of the references in section 10(f) to conducting proceedings in the same manner and to making and entering decrees in a like manner.
 
 
 6
 The union in response to the Board's first line of argument relies in part upon the fact that when it sought to intervene in Kesner's review proceedings the Board objected stating that if the union desired review of the Board's decision adverse to it, "it may employ the simple expedient of filing a petition to review under section 10(f) of the Act." We are not persuaded that the Board's prior suggestion that Local 705 file a § 10(f) petition precludes the Board from now challenging the union's right to attack the Board's order on any legal basis it chooses. The suggestion scarcely invokes the application of waiver or estoppel concepts. See Marshall Field & Co. v. N.L.R.B., 318 U.S. 253, 256, 63 S.Ct. 585, 586, 87 L.Ed. 744, 746 (1943).
 
 
 7
 The relevant portion of the cross-referenced section 10(e) provides:
 
 
 8
 No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.
 
 
 9
 Under applicable Board rules, "(a)ny exception to a ruling, finding, conclusion, or recommendation which is not specifically urged shall be deemed to have been waived. Any exception which fails to comply with these foregoing requirements may be disregarded." 29 C.F.R. § 102.46(b).
 
 
 10
 Local 705 urges that it can raise the Miranda Fuel objection before this court because it won before the ALJ and therefore had no cause to urge this point or any other point before the Board. As authority for this position, Local 705 cites N.L.R.B. v. Teamsters Local 282, 412 F.2d 334, 337 n. 2 (2d Cir.1969), cert. denied, 396 U.S. 1038, 90 S.Ct. 682, 24 L.Ed.2d 682 (1970), and N.L.R.B. v. Good Foods Mfg. Co., 492 F.2d 1302, 1305 (7th Cir.1974). We do not find that these cases require this court to conclude that Local 705 has shown "extraordinary circumstances" excusing its failure to present the Miranda Fuel question to the Board, and we find no such circumstances under the factual circumstances of this case. See also Barton Brands v. N.L.R.B., 529 F.2d 793 (7th Cir.1976).
 
 
 11
 While Good Foods uses language facially supporting Local 705's position, this court in that case found that the exception for extraordinary circumstances was inapplicable because the ALJ's decision was basically adverse to Good Foods and the major factual findings were initially determined against Good Foods by the ALJ.
 
 
 12
 In the present case, the ALJ at least impliedly, made a finding or conclusion adverse to Local 705. By hearing the evidence and formulating a recommended decision, the ALJ implicitly concluded that the NLRB had jurisdiction over the unfair labor practice charge. Indeed, at the outset of his treatment of the alleged breach by Local 705 of its duty to represent Kesner in processing his grievance, the ALJ observed that "(t)he existence of a duty imposed upon a bargaining agent to represent all employees in a bargaining unit, free from unfair, irrelevant, or invidious discrimination, can be found in Board cases going back to Miranda Fuel Co. . . ." 209 NLRB at 304. If Local 705 believed that NLRB jurisdiction under Miranda Fuel represented either an erroneous conclusion of law or an incorrect Board policy, it could easily have pressed this objection. The applicable regulations dealing with exceptions or cross-exceptions explicitly state that such objections can specifically question matters "of procedure, fact, law, or policy. . . ." 29 C.F.R. § 102.46(b); § 102.46(e). Although Local 705 now casts its Miranda Fuel argument in terms of a lack of Board jurisdiction, it could have formulated its contention in the form of a policy objection, particularly in view of the preemption principles by which both the NLRB and the Supreme Court have drawn the lines of exclusive or concurrent jurisdiction. See A. Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337 (1972). Since we think the jurisdictional form of the contention is not frivolous, we shall approach the matter in the manner in which the question is now framed.
 
 
 13
 The Board cites Red Cross Drug Co., supra at 1248, in support of its position that this court cannot pass upon the jurisdictional contention. In that case in none of the Board proceedings had the company raised the issue or otherwise questioned the Board's assertion of jurisdiction. Resting on the relevant language of section 10(e) and, at least in part on N.L.R.B. v. Ochoa Fertilizer Co., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961), this court found that Red Cross was estopped from raising the jurisdictional contention before this court. The court then went on to find that, even in the absence of the barring provision of § 10(e), the company's contention on the merits was unsupportable. Id. at 1248.
 
 
 14
 At first glance, the present review petition appears to present a problem analogous to that in Red Cross. In that case, however, the respondent was arguing against an assertion of Board jurisdiction on the ground that it had transgressed its own self-imposed gross volume limitation for retail enterprise. In this case, the jurisdictional objection stems from an entirely different source. Local 705 has detailed the rationale and history of the Board's Miranda Fuel doctrine,[4] and has suggested that the Supreme Court has not yet passed on the doctrine while the Board itself has questioned its present vitality. We think that there is considerable difference between a jurisdictional contention attacking a self-imposed jurisdictional limitation and one asserting that court decisions have eroded the vitality of an arguably incorrect Board conclusion without which the Board would have had no statutory basis for entertaining the proceedings.
 
 
 15
 In the § 10(e) situation, the Supreme Court has held that the court in which the Board has sought enforcement "need not render such a decree if the Board has patently traveled outside the orbit of its authority so that there is, legally speaking, no order to enforce." N.L.R.B. v. Cheney Lumber Co., 327 U.S. 385, 388, 66 S.Ct. 553, 554 (1946). See also Ochoa, supra 368 U.S. at 322, 82 S.Ct. at 347-48, 7 L.Ed.2d at 315-16; N.L.R.B. v. Red Spot Electric Co., 191 F.2d 697 (9th Cir.1951). We recognize that the cases which have rejected the Board's § 10(e) contentions where there were claims of NLRB usurpation of authority are not necessarily applicable to the § 10(f) petition situation. In the § 10(e) situation, the court would be directly implicated in the enforcement of an administrative order beyond the jurisdiction of the agency which, of course, it would not be doing in the § 10(f) situation. As to the § 10(e) situation, it appears to us that a proper underlying premise of the holdings that review was available stems from the traditional considerations activated in the exercise of equitable powers and the natural desire of the judiciary to foster and promote adherence to fundamental legal principles.
 
 
 16
 We see no strong policy reason for denying review to a petitioner who has fully complied with an order which it seriously contends was beyond the authority and jurisdiction of the Board. A proper analysis of the reasons for judicial review suggests that this court has the same jurisdiction in a section 10(f) review context as it possesses in the section 10(e) enforcement context. However, the presence of limiting language in the Cheney and Ochoa opinions suggests that we take a narrower approach. Accordingly, we hold that section 10(f), 29 U.S.C. § 160(f), grants to the courts of appeals the same jurisdiction to consider serious legal objections, based on the coherent and historical analysis of relevant case law, which claim that the National Labor Relations Board has patently traveled beyond the orbit of its authority as does section 10(e), 29 U.S.C. § 160(e).
 
 B. The Merits of the Miranda Fuel Argument
 
 17
 Our conclusion that Local 705's argument regarding the Miranda Fuel doctrine falls within the scope of review provision of section 10(f) does not mean that its contention is meritorious. On the contrary, we conclude that the recent Supreme Court decisions reaffirming the doctrine of fair representation and allowing a broader judicial exception to the preemption doctrine cannot be read to imply a holding that the NLRB has no jurisdiction over unfair representation cases. Although the Supreme Court has held that the courts should retain jurisdiction in cases involving conduct which arguably constitutes an unfair labor practice, see Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), its decisions have not expressly ousted the NLRB of jurisdiction over such cases. Indeed, Emporium Capwell Co. v. Community Org., 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975), points in the opposite direction.
 
 
 18
 In our opinion, on the record before us, the Board was acting within the scope of the Act when it concluded that Local 705 violated § 8(b)(1)(A). As the Fifth Circuit observed in United Rubber Workers Local 12 v. N.L.R.B.,368 F.2d 12, 20 (5th Cir.1966), cert. denied, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967), the language of section 8(b)(1)(A), unlike certain other provisions of section 8, is not restricted to discrimination which encourages or discourages union membership. While we would have difficulty in saying that a union's failure to act vigorously as an advocate in presenting a grievant's position when it had undertaken to do so would be unrelated to an employee's union membership and activities, we do not propose, in any event, to read into the statute language which the Congress did not put there. In a somewhat analogous context, the recent Barton Brands decision of this court suggested that limiting breach of the duty of fair representation claims to those relating specifically to union membership or activities was not acceptable. Although the court there did not pass directly on the § 8(b)(1)(A) question, it briefly referred to the duty of fair representation and cited approvingly Truck Drivers and Helpers, Local Union 568, Teamsters v. N.L.R.B., 126 U.S.App.D.C. 360, 379 F.2d 137 (1967), and Judge Friendly's dissent in Miranda Fuel, 326 F.2d 172, 180-86. In its brief in this case, Local 705 candidly admits that Local 568, supra, stands for exactly the same proposition as United Rubber Workers, which we have here followed. See also Clark, The Duty of Fair Representation: A Theoretical Structure, 51 Texas L.Rev. 1119 (1973).
 
 
 19
 The union also challenged the Board's holding on the basis that it in effect establishes a per se violation of its duty of fair representation, and thereby § 8(b)(1)(A) of the Act, only because the union places before the contract arbitral panel a legally correct and good faith contract interpretation, which is inconsistent with the grievant's, where the union honestly believes that the grievant's construction may adversely affect the job rights of other represented employees. Even though the Board ruling may properly be considered as having prima facie aspects reflecting upon whether a union met its obligation of fair representation, we are not persuaded that the Board has created a per se rule. The Board had the complete record of the processing of Kesner's grievance before it, and it was able to place Heim's statement that Kesner did not have a valid grievance into the context of the various meetings and hearings. Assuming that Heim's statement to the November 8, 1972, Joint Grievance Committee represented a legally correct and good faith interpretation of the collective bargaining agreement, and that acceptance of Kesner's position would adversely affect the job rights of other represented employees, we note that "proof of good faith on the part of a union is not a defense to a charge based on the duty of fair representation since arbitrary conduct without evidence of bad faith has been held by this Circuit to constitute a breach of the duty." Barton Brands, supra at 799, citing Orphan v. Furnco Construction Corp., 466 F.2d 795 (7th Cir.1972); Moore v. Sunbeam Corp., 459 F.2d 811 (7th Cir.1972). Accord, Ruzicka v. General Motors Corp., 523 F.2d 306 (6th Cir.1975); Beriault v. Local 40, Super Cargoes and Checkers, 501 F.2d 258 (9th Cir.1974).
 
 
 20
 We are not unmindful of Local 705's argument that a union may in good faith refuse to process a member's grievance altogether, a premise which the Board does not controvert. It is venerable tort law that purporting to take action where duty is nonexistent creates in itself certain duties, or as the Board puts the matter, "it is a commonplace of our jurisprudence that those who act where they are not obliged to are nevertheless liable for misfeasence (sic) in the course of their undertaking." It is one thing for a grievant to attempt to pursue his remedy without assistance and opposed only by one adversary. When that situation is compounded by two opponents, one of whom is supposedly his "own people," the bearing on the likelihood of his success assumes substantial significance. When one's own representative who has been willing to assume that status proclaims a lack of merit, it is indeed likely to be a coup de grace to the claim. The Board held that it was upon the facts of the case before us even though ultimately it was also determined that it was an unnecessary dagger.
 
 
 21
 On the basis of the record in this case, it is our holding that the Board's conclusion that Local 705, through Business Agent Heim, breached its duty of fair representation by failing to meet the obligation it undertook of fully and fairly advocating Kesner's grievance must be sustained on the union's petition to review.
 
 Petition 75-1073
 
 22
 Petitioner Aaron Kesner asks this court to set aside that part of the NLRB order which refused to require an affirmative remedy against Local 705 for its breach of the duty of fair representation. Section 10(c) of the Act, 29 U.S.C. § 160(c), provides that the Board may order a violator "to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter . . . ." It is well established that the Board's choice of remedies will not be disturbed on review in the absence of a clear abuse of discretion. E. g., N.L.R.B. v. My Store, Inc., 468 F.2d 1146, 1149 (7th Cir.1972), cert. denied, 410 U. S. 910, 93 S.Ct. 965, 35 L.Ed.2d 271 (1973). The Board's discretion in the selection of remedies is broad, and the scope of review for this court is narrow. Under section 10(f), 29 U.S.C. § 160(f), the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole are conclusive.
 
 
 23
 In this case, the Board found that Kesner was initially hired by F & K as a temporary employee and that, as such, he did not accrue seniority for purposes of recall from layoff and that, therefore, his grievance was without merit. Under these circumstances, the Board concluded that the Union's failure fully and fairly to represent Kesner did not cause him to suffer any loss of earnings. Moreover, the Board and the ALJ credited the testimony of those witnesses who stated that if the union and an employer both understand that any employee is being hired on a temporary basis, the temporary employee accrues no seniority absent unusual circumstances. The Board found on the basis of record evidence that temporary employees do not accrue seniority under the collective bargaining agreement.
 
 
 24
 The Board's findings are supported by substantial evidence, and this court is without power to set them aside. Kesner seeks to have the record reopened on the basis of approximately 160 pages of documents. However, we accept the NLRB assertion that these documents and records merely buttress Kesner's claim that on numerous occasions the Union dispatched various employees to F & K in derogation of his claimed seniority. Since the Board's finding that Kesner was hired as a temporary employee is conclusive, as is its finding that Kesner accrued no seniority, any such documents would be immaterial and would not warrant a remand for further proceedings. Accordingly, this court can adhere to the substantial evidence rule of § 10(f) only by a denial of the petition for review.
 
 
 25
 Kesner along with his brother, as noted by the ALJ, 209 NLRB at 294-95, was involved as a protagonist in diverse cases before the NLRB. In his appearance before us in the present case, he has attempted to raise various matters which pertain to cases not properly before us. While we are not unsympathetic to his determined pursuit of what he apparently sincerely believes to be his unvindicated rights, we decline to extend the scope of this proceeding beyond the boundaries of those matters properly before us.
 
 
 26
 For the reasons hereinbefore set out the petitions for review are
 
 
 27
 Denied.
 
 
 
 [1]
 Section 8(b)(1)(A) provides: "It shall be an unfair labor practice for a labor organization or its agents (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . . ."
 
 
 [2]
 The Board also refers us to: Marshall Field and Co. v. N.L.R.B., 318 U.S. 253, 255-256, 63 S.Ct. 585, 586, 87 L.Ed. 744, 745-46 (1943); N.L.R.B. v. Good Foods Mfg. & Processing Co., 492 F.2d 1302, 1305 (C.A. 7, 1974); Red Cross Drug Co. v. N.L.R.B., 419 F.2d 1245, 1248 (C.A. 7, 1969); U. S. v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 36-37, 73 S.Ct. 67, 68-69, 97 L.Ed. 54, 57-58 (1952)
 
 
 [3]
 The absence of a Board petition for enforcement in the present case stems from the fact that Local 705 has fully complied with the Board order. Although petitioner Kesner disputes this fact, the Board avers that the Chicago Regional Office "acted well within its discretion in finding there had been compliance with the Board's order and in thereafter closing the case." We accept the fact of compliance as established
 
 
 [4]
 Local 705 capsulizes the doctrine in one short sentence, i.e., "The Board has the authority to find a § 8(b)(1)(A) violation for the breach of fair representation absent motives relating to union membership or activities."